**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| KENNETH D. ROGERS, ANDREW W. DUNN, PAT H. COONE, BETTY S. COONE, WAYNE D. BUTCHEE, CLINT L. HINES, DAVID G. HINES, SYBIL K. JENKINS, and JAMES H. NUGENT, | § § § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIV. ACTION NO. 1:04-CV-611 |
| JOE E. PENLAND, SR., ROBERT L. McDORMAN, C. MESHELL McDORMAN, DEON C. THORNTON MAC-PRO, LTD., MAC-PRO GP, L.L.C. McDORMAN MOTORS, LTD., McDORMAN MOTORS, GP, L.L.C. RLM MOTOR COMPANY LTD., and RLM MOTOR COMPANY GP, L.L.C., | § § § § § § § § § | |
| *Defendants*. | § § | |

**ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION TO ALTER OR AMEND JUDGMENT, AND MOTION FOR NEW TRIAL**

Before the court is Plaintiffs' Motion for Judgment as a Matter of Law, Motion to Alter or Amend Judgment, and Motion for New Trial [Doc. # 376]. Plaintiffs assert five arguments to support their motion. Plaintiffs only raised two of the five arguments at the close of the evidence and before the Final Judgment was entered.[1] Even assuming this procedural defect was not present, the court finds there was evidence to support the jury's verdict. Accordingly, Plaintiffs' motions are denied.

---

[1] Both were related to the *in pari delicto* defense: (1) that the court applied the wrong standard; and (2) that there was no evidence to support the defense.

## I. Procedural History and Background

Plaintiffs Ken Rogers, Andrew Dunn, Pat Coone, Betty Coone, Wayne Butchee, Clint Hines, David Hines, Sybil Kenkins, and James Nugent[2] (collectively "Plaintiffs") filed suit in the United States District Court, Eastern District of Texas, Lufkin Division July 3, 2003.[3] Plaintiffs sued Joe Penland, Sr. ("Penland"), Robert McDorman ("McDorman"), Meshell McDorman ("Ms. McDorman"), Deon Thornton ("Thornton"), and various McDorman companies[4] under the Racketeering Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) and (d), and also made various state law claims.

The Plaintiffs and Penland were extremely litigious, with both sides engaging in extensive motion practice. During the sixteen months the case has been on the court's docket, numerous motions hearings were conducted and over twenty-five orders were issued.[5] Penland asserted counterclaims and cross-claims, and the court denied, with prejudice, Penland's Third Amended Counterclaim and Cross-Claim on July 28, 2004 [Doc. #169].[6]

McDorman, his wife, and the entity Defendants began the case with counsel, but they withdrew on May 7, 2004. McDorman and Ms. McDorman chose to proceed *pro se*.[7] McDorman

---

[2] Independent Executor of the Estate of James Nugent was substituted for James Nugent. Plaintiffs are all former directors and shareholders of Maureciville National Bank ("MNB")

[3] The case was transferred by agreement of all parties on September 21, 2004 [Doc. #187].

[4] The entity Defendants were the following: Mac-Pro, Ltd.; Mac-Pro GP, L.L.C.; McDorman Motors, Ltd.; McDorman Motors GP, L.L.C.; RLM Motor Co., Ltd.; and RLM Motor Co. GP, L.L.C.

[5] The case was originally assigned to the late Judge John Hannah and then to Judge Leonard Davis, and was finally transferred to this docket on March 17, 2004 [Doc. # 115].

[6] Penland attempted to file a Fourth Amended Counterclaim March of 2005, but Penland's Motion for Leave to File was denied [Doc. #241].

[7] The McDormans filed a motion to appoint counsel shortly before the trial began and that motion was denied [Doc. #291].

entered a plea with the United States Attorney's Office for Bank Fraud on April 21, 2004 and was sentenced on August 18, 2004. McDorman was incarcerated in December of 2004 in the Federal Correctional Institution (FCI) Big Springs. The court issued a writ of Habeas Corpus ad Testificandum to secure McDorman's presence for the pre-trial hearings and trial. McDorman was present for both pre-trial hearings and every day of trial. Ms. McDorman was present for the pre-trial hearings and sat through the entire trial, but chose not question any witnesses.

Thornton was a named Defendant, but chose not to participate in the litigation or trial. She was not present for the pre-trial, jury selection, or trial, except for being called as a witness. She chose to take the Fifth Amendment for the majority of questions posed to her.

On June 22, 2005, after twelve days of trial, the case was submitted to a jury of eight.[8] The jury returned its verdict the following day. The jury found Penland not liable on all counts. The jury found McDorman, Ms. McDorman, the McDorman entities, and Thornton liable under § 1962(c) and awarded $3,374,256.00 in damages. The jury found McDorman, Ms. McDorman, and the McDorman entities liable under § 1962(d), conspiracy to violate § 1962(a) and awarded zero damages. The jury found McDorman, Ms. McDorman, the McDorman entities, and Thornton liable under § 1962(d), for conspiracy to violate § 1962(c) and awarded zero damages. The jury found that the Plaintiffs were *in pari delicto* by answering "Yes" to Special Issue No. 5. The jury found no Defendants liable for common law fraud, or conspiracy to commit fraud. The jury found McDorman, Ms. McDorman, and Thornton liable for constructive fraud and awarded zero damages. In accordance with the jury's verdict, the court entered a take nothing Final Judgment June 24, 2005 [Doc. #374]. Plaintiffs have filed the present motions to overturn the Final Judgment and jury verdict. In their motions Plaintiffs request oral argument. Considering the court's familiarity with the case, the court finds that oral argument is not warranted.

---

[8] The court originally empaneled ten jurors, but two jurors were excused during trial.

## II. Standard of Review

### A. Judgment as a Matter of Law

A party moving for judgment as a matter of law has a heavy burden to meet. Fed. R. Civ. P. 50(a); *see Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004). "[I]f reasonable persons could differ in their interpretations of the evidence, then the motion should be denied. A post-judgment motion for judgment as a matter of law should only be granted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at contrary verdict. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (internal quotations omitted). A jury's verdict is given great weight and all reasonable inferences are drawn in the light most favorable to the verdict. *Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000).

A party moving for a judgment as a matter of law must first do so at the close of all evidence, in order to renew such a motion after judgment has been rendered. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 471 (5th Cir. 2000); Fed. R. Civ. P. 50(b). There are instances where "technical noncompliance" with Fed. R. Civ. P. 50(b) has been excused when purposes of the rule have been satisfied. *See Alcatel U.S.A., Inc. v. D.G.I. Techs., Inc.*, 166 F.3d 772, 780 (5th Cir. 1999); *but see Delano-Pyle v. Victoria County*, 302 F.3d 567 (5th Cir. 2002) (finding that a motion not renewed at the close of evidence to be waived). Therefore, any arguments Plaintiffs make which were not made at the close of the evidence are deemed waived. *Taylor Pub. Co.*, 216 F.3d at 471.

### B. Motion for New Trial

There are no precise grounds for granting a new trial, except "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The courts have developed a number of theories for granting new trials, such as where the verdict is against the great weight of the evidence, the damages are excessive, the trial

was unfair, or prejudicial error was committed. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). "A motion for a new trial should not be granted unless the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence." *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838-39 (5th Cir. 2004). The court must not substitute its opinion for the collective wisdom of the jury. *Smith*, 773 F.2d at 613.

**C. Motion to Alter or Amend Judgment**

A motion to alter or amend the judgment is governed by Fed. R. Civ. P. 59(e). *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 231 (5th Cir. 2003). A motion to alter or amend the judgment "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" and "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azurix Corp.*, 332 F.3d. 854, 863 (5th Cir. 2003) (quoting *Simon v. U.S.*, 891 F.2d 1124, 1159 (5th Cir. 1990)).

In addition, under Fed. R. Civ. P. 59(e), a court may also alter or amend a judgment when there has been an intervening change in the controlling law. *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

### III. Analysis

**A. Applicability of Motions to Joe Penland, Sr.**

**1. *In Pari Delicto* Irrelevant to Penland**

Plaintiffs' first four arguments are variations on the theme that the *in pari delicto* defense should not apply, so they are entitled to judgment against all Defendants. However, the jury answered "No" to all liability questions concerning Mr. Penland. The affirmative defense was irrelevant in his case. It can not be the basis for overturning, or reviewing the judgment in favor of Mr. Penland.

**2. No Undisputed Evidence Against Penland**

Plaintiffs fifth argument is that the undisputed evidence "confirms" that Defendant Penland violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). This argument evidences a misunderstanding of the Federal system of jury trials. The role of Plaintiffs and their counsel is to make claims, present evidence, and advance arguments. The jury determines credibility, decides disputed fact issues, and renders a verdict. Nobody who was in the courtroom could state with a straight fact that Penland did not hotly dispute Plaintiffs' contentions about him in his own testimony, with evidence from other witnesses, and by pointed cross-examination of Plaintiffs' witnesses. Plaintiffs had the burden of proof on their claims against Penland. Having failed to convince the jury, it is not enough to point to evidence and arguments they wished the jury believed.[9] This is not the former Soviet Union, and jurors are not simply told by the Court, or attorneys bringing the case, what they will find.

In short, the court must reject Plaintiffs broad arguments that a reconsideration of the *in pari delicto* defense mandates a reversal, or a revision, of the jury's failure to find that Penland was in any way liable to Plaintiffs. As to Plaintiffs fifth argument, Penland's alleged involvement was hotly contested, with ample evidence on both sides. That is precisely why we have juries, and Plaintiffs have not remotely approached the standard for ignoring or overturning the verdict.

**B. Analysis of Motions as Applied to the McDormans and Thornton**

**1. Plaintiffs Status as Assignees of Bank Does Not Shield Them**

Plaintiffs' first argument is that they are assignees of Mauriceville National Bank ("MNB") and any actions they took could not be attributed to MNB. Plaintiffs did not raise this theory in a

---

[9] Plaintiffs **own** banking expert testified that once a bank, like Community National Bank, discovers a kite scheme, it should take all possible actions to protect itself, even if the loss falls on another bank. In fact Mr. Williams said that is precisely how he had reacted as a banker when a kite scheme was discovered involving his bank.

6

Rule 50(a) motion at the close of evidence, so they have waived any right to challenge it under Rule 50(b). *Taylor Pub. Co. v. Jostens*, 216 F.3d at 471.[10] Nevertheless, the court will analyze the claim in light of the evidence and verdict.

Plaintiffs' argument is a red herring. The jury was not asked to find whether Plaintiffs in an individual capacity, as shareholders, or as assignees, were "equally responsible." Jury Special Issue No. 5 reads:

> Do you find from a preponderance evidence that the **Board of Directors** of Mauriceville National Bank were substantially equally involved in the same pattern of racketeering activity as the Defendants for whom you may have answered "Yes" in answer to Special Issue No. 1 and/or Special Issue No. 3A or 3B? (emphasis added).

The jury answered "Yes." This was a finding as to MNB's Board of Directors, not as to Plaintiffs in their individual, or other, capacities.

Plaintiffs cite numerous principal-agent relationship cases. This is not that type of case. Here, Plaintiffs were the Board of Directors of the bank and majority shareholders of the bank. To argue that actions of the Board of Directors and majority shareholders could not be attributed to the bank defies common sense. A corporation may act only through its officers and directors. Fifth Circuit Pattern Jury Inst. 12.6; *see Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1306 (7th Cir. 1987), *cert. denied*, 492 U.S. 917, 109 S. Ct. 3241 (1989) (applying the principal to the RICO statutes).

If Plaintiffs are claiming they are mere agents, whose actions can not be attributed to MNB, then who was their principal? It seems absurd for Plaintiffs to:

1. Admit that they were directors and the majority shareholders, and yet;

2. Claim that as mere agents they were acting against the best interest of the bank so their actions can not be imputed to the bank; and that

---

[10] This is not a case of "technical noncompliance" with the Rule, but rather an absolute failure to raise such a motion. Plaintiffs did orally discuss the issue of attributing the action of Bank officers, directors, and employees to the Bank, but this was in relation to the *in pari delicto* defense. Trial Tr. July 21, 2005, p. 116-117.

7

3. Since they are now assignees of the bank's position, and since any actions they took against the bank's interest can not be attributed to the bank, they may now recover individually, in spite of the jury's finding that the Board of Directors was substantially equally involved in the same pattern of racketeering activity as the Defendants.

The evidence was clear that the Board of Directors knew they were getting a higher than normal rate of return on the McDorman transactions, which benefitted MNB (and Plaintiffs as shareholders). It is a little incongruous for Plaintiffs to claim they were trying to help the bank (when they were directors), but (now that they are assignees) because of the scheme's untimely collapse it turns out that really they were not acting in the bank's best interest.

Plaintiffs rely heavily upon *Schacht v. Brown*, 711 F.2d 1343 (7th Cir. 1983). The case involved § 1964(c) claims by the State of Illinois Insurance Director, who had stepped into the shoes of an insolvent insurance company, against the company's former business partners, directors and officers. *Id.* at 1345-46. The Director was authorized, pursuant to an Illinois statute, to bring the claims on behalf of the insolvent company. *Id.* at 1346. Plaintiffs assert that *Schacht* stands for the proposition that the mental state of the directors could never be attributed to the bank. This is incorrect. The *Schacht* opinion does not stand for such a proposition. The case merely alludes to the proposition of imputed knowledge and, if anything, holds that a corporation could be held responsible to outside creditors if its directors and shareholders were working to fraudulently inflate inventories and stock prices. *Id.* at 1347.

*Schacht*, in fact examines the perverseness of allowing corrupt directors to recover money by claiming their acts could not be attributed to the corporation. *Id.* at 1348. If this court were to allow Plaintiffs, as assignees of MNB, to recover, notwithstanding the jury's findings concerning the actions by its Board of Directors, the Board of Directors would be compensated, even though

they were found to have participated in the fraudulent activity. Equity does not support such a recovery.

Plaintiffs argue that con artists, crooks and insiders should not be allowed to steal from, and cheat, the bank. This is true, and is exactly why the court instructed the jury that wrongdoing of Thornton or other MNB employees was not a defense unless "they had the approval of, and authority from, the Board of Directors to engage in the alleged bank fraud." Plaintiffs did not object to this portion of the jury instruction. The jury found that the Board of Directors were substantially equally involved as Defendants in the same bank fraud. Accordingly, Plaintiffs first ground for relief is denied.

### 2. *In pari delicto* Defense Properly Applied

The Plaintiffs make three separate arguments relating to the *in pari delicto* defense: (1) it was not properly pled by any of the Defendants; (2) the court applied the wrong standard; and (3) there is no evidence to support it. Plaintiffs did file a Motion for Judgment as a Matter of Law on the *In Pari Delicto* Defense at the close of evidence [Doc. #356], relating solely to points two and three. Since Plaintiffs did not raise the first point at the close of the evidence they are not permitted to raise it under Rule 50(b). *Taylor Pub. Co. v. Jostens*, 216 F.3d at 471. The court orally denied Plaintiffs' motion on June 21, 2005, stating that there was circumstantial evidence to support the *in pari delicto* defense and the jury would be properly instructed on its limitations. Trial Tr. June 21, 2005, p. 116. At the charge conference on June 21, 2005, Plaintiffs did not object to the wording of the *in pari delicto* instruction. *See* Trial Tr. July 21, 2005, p. 146-164. Furthermore, Plaintiffs did not object to the wording of Special Issue No. 5. Trial Tr. July 22, 2005, p. 6.

### a. Pleading of *in pari delicto*

Parties must plead affirmative defenses. Fed. R. Civ. P. 8(c). *In pari delicto* is not listed as one of the nineteen defenses required to be pled under 8(c), but it is a form of "unclean hands." *In pari delicto* squarely falls under the catchall phrase of 8(c): "any other matter constituting an avoidance or affirmative defense." As noted previously, whether Penland expressly pled *in pari delicto* is a moot issue, since the jury failed to find he was liable. As to the McDormans and Thornton, McDorman was *pro se* and in prison at the time the pre-trial order was submitted, and the McDormans did not actively participate in the drafting of the pre-trial order. Pre-trial Order p. 31, Section 3, Contentions of Defendant Deon Thornton and the McDorman Defendants. Thornton, relying on her Fifth Amendment rights did not participate either.

The McDorman Defendants' Answer [Doc. #38] did clearly state the bank knowingly participated in the transactions of which he was accused by Plaintiffs. McDorman Answer p. 101-103. The McDormans' Answer also specifically pled "unclean hands," and "*in pari delicto*" is a narrowly construed form of "unclean hands."[11] The Joint Final Pre-trial order does not explicitly state *"in pari delicto."* However, the Joint Final Pre-trial Order is governed by the same notice pleading rules, and must only set out a short and plain statement of the defense. Fed. R. Civ. P. 8(b). Paragraphs 2, 4, 6, 12, 15, and 16 of the Joint Final Pre-trial Order (pages 28-30), read together, properly plead the *in pari delicto* defense. Alternatively, the Defendants, while not originally pleading the words "*in pari delicto*," did contend from the onset of the case, through counterclaims and motions, that the bank Board of Directors were involved in the activity for which they were claiming relief.

---

[11] In analyzing the difference between these imprecise terms, "unclean hands" might include something as limited as dirty finger nails, where "*in pari delicto*" implies the party is up to his elbows in filth.

Plaintiffs were fully aware that the *in pari delicto* defense was part of the case, and even filed a pre-trial brief outlining its differences from the unclean hands defense [Doc. #323]. The court deemed the defense joined at the June 1, 2005 final pre-trial hearing. Trial Tr. June 1, 2005, p. 11-20.

Issues such as the *in pari delicto* defense may be tried by implied consent under Fed. R. Civ. P. 15(b). *See Portis v. First Nat. Bank of New Albany*, 34 F.3d 325, 332 (5th Cir. 1994). There was extensive testimony at trial related to McDorman's direct involvement with the Board of Directors. Plaintiffs did not make a specific objection to McDorman's statement during closing that "I was the bank," or his other remarks about how he got whatever he wanted at the bank and everyone knew it. Trial Tr. June 22, 2005, p. 107. The Defendants' stance at trial was clear the bank knew exactly what was going on. Plaintiffs had a full opportunity to defend against *in pari delicto,* and had been in fact defending against it from the beginning of the case. *See Jones v. Miles*, 656 F.2d 103, 107 (5th Cir. 1981).

Ultimately, the issue is whether *in pari delicto* was joined in a "pragmatically sufficient time," and the Plaintiffs were not "prejudiced in [their] ability to respond." *See Chambers v. Johnson*, 197 F.3d 732, 735 (5th Cir. 1999). The court finds it was timely joined, and Plaintiffs were not unfairly prejudiced. They specifically briefed the issue, presented evidence, and argued against it.

### b. The *in pari delicto* standard

Plaintiffs argument that the court applied the wrong standard is incorrect for several reasons. The court gave its ruling on the *in pari delicto* defense at the pre-trial hearing, setting out on the record its finding as to public policy considerations and the applicable standard. Plaintiffs did not object, and did not submit a requested jury instruction containing the wording from the Eleventh Circuit case that they now argue would have been more appropriate.

11

Plaintiffs did not object to the wording or language of the *in pari delicto* jury instruction or of the *in pari delicto* Special Issue. Only after the case was sent to the jury did they suggest that the court applied the wrong standard.

The cases relied upon by the court at the June 1, 2005 pre-trial hearing, and those listed in the Draft Jury Instructions provided by the court to the parties, set out the proper *in pari delicto* standard. *See Bateman Eicher*, *Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11, 105 S. Ct. 2622 (1985); *In re Royale Airlines*, 98 F.3d 852, 855-56 (5th Cir. 1996); *Banc One Capital Part. Corp. v. Kneipper*, 67 F.3d 1187, 1197 (5th Cir. 1995). The court covered this issue and its reasoning, in detail on the record. The jury was asked if Plaintiffs were "substantially equally involved in the same pattern of racketeering activity." This fairly presented the issue to the jury.

As far as explanations, about the effect of the *in pari delicto* defense, the court submitted a detailed instruction on the basis for the defense. As noted, the language was based upon *Bateman Eicher* and *Royale Airlines*. Plaintiffs neither asked for an additional instruction indicating that it would be a complete bar, nor objected to the instruction on that ground. It was because the instruction alone gave no clear guidance to the jury about what to do if they found for Defendants on this issue, that the court submitted Special Issue No. 5. While he was free to do so, Plaintiffs' counsel never told the jury in final argument what the effect of this answer would be. Any complaint in this regard has been waived.

**c. Evidence of** ***in pari delicto***

As the court noted when it denied Plaintiffs motion at the close of the evidence and after the jury returned its verdict, both the case brought by Plaintiffs, and the defense, are based upon circumstantial evidence. There was circumstantial evidence that the Board of Directors knew about, approved of, and authorized what was going on. Some directors admitted to attending various meetings with McDorman. They admitted to knowing about at least some improprieties involving

cashiers checks. They admitted that concerns were raised at Board meetings, but no action was taken, and that the rate of return on McDormans' "unusual" transactions was unusually high. Numerous, if not all MNB employees were involved in the McDorman operations, and President Thornton was key to the operation.

Furthermore, there was ample evidence of the relationship McDorman had with the bank. Ken Rogers testified that McDorman was a "good customer." Trial Tr. June 8, 2005, p. 37-38. Yet, there was a substantial amount of evidence which indicated that McDorman was more than a "good customer." He brought in a substantial amount of business to the bank. McDorman testified to approving indirect loans for MNB, essentially working as their agent and getting instant credit for the loans. There was evidence that the bank would issue cashiers checks without available funds in the McDorman accounts. It was uncontroverted that Thornton, with full knowledge of the Board, was exceeding her lending authority in issuing cashiers checks to McDorman. A jury may draw reasonable inferences, and a reasonable jury could infer from the evidence that the Board was involved in the "same pattern of racketeering activity" in which the McDormans and Thornton were engaged.

The court is not going to substitute its judgment for that of the jury in this case, nor make independent credibility determinations about witnesses. The jury was free to choose whom to believe. The jury finding that "the Board of Directors of Mauriceville National Bank were substantially equally involved in the same pattern of racketeering activity as the Defendants . . ." is supported by evidence. The facts and inferences of the case do not point so strongly and overwhelmingly in favor of Plaintiffs, that a reasonable jury could not have found for Defendants.

**C. Jury Verdict**

Plaintiffs contend two issues regarding the jury verdict form necessitate a new trial.[12] First, they claim that because the jury did not answer some of the questions on the Verdict Form, they did not follow the court's instructions. This is absurd. The questions not answered should have been passed over, given the usual conditional instructions not to answer them if a previous finding was "No." Plaintiffs had no objections to the conditional instructions in the Verdict Form.

Plaintiffs next assert that because the jury answered "Yes" to Special Issue 3A and 3B (liability under RICO) and "$0.00" to Special Issue 4 (damages) the jury committed error. In the first place, any claim of error is moot given the jury's finding that MNB's Board of Directors was *in pari delicto* with the certain Defendants. Alternatively, the jury was only to award "damages to which the Plaintiffs are entitled." The burden was on Plaintiffs to prove the damages "arising from the violation . . ." that was found. *Wingerter v. Maryland Casualty Co.*, 313 F.2d 754, 756-57 (5th Cir. 1963). As discussed in more detail below, Plaintiffs are not in any position to claim that they established as a matter of law, (or even very clearly) the amount of actual damages that arose from the various acts of the Defendants.

Plaintiffs also complain that the jury found that certain Defendants, other than Penland, committed certain RICO violations, but failed to find they committed common law fraud. But the claims are not identical and the jury was instructed, without objection, not to confuse the two, nor to confuse the definitions applied to each. [Doc. #363], Jury Instruction, p. 23. Plaintiffs had the burden of proving common law fraud and conspiracy to commit fraud. They failed. The jury finding is not against the great weight of the evidence.

---

[12] Plaintiffs complain that the court, "on its own" submitted Special Issue No. 5. A trial court is required to submit a proper charge, regardless of the requests made by the parties.

Plaintiffs assert that the jury erred in finding that the McDormans and Thornton committed constructive fraud (Special Issue No. 10), but answered "$0.00" to Special Issue No. 11. The jury was instructed to consider only "alleged loss of money to the Bank and the reduction in value of the Bank." Plaintiffs did not object to the issue, nor to the applicable instructions.

The burden was on Plaintiffs to prove the amount that would compensate Plaintiffs for their damages, if any . . . that were proximately caused by the constructive fraud of Mr. and Mrs. McDorman, and Ms. Thornton. The jury was instructed not to confuse fraud claims with RICO claims. So the fact that the jury found that damages were proximately caused by the RICO violation does not mean Plaintiffs have necessarily proved an amount of damages from constructive fraud. The evidence concerning the loss to the bank was far from crystal clear.[13] There was some evidence that the bank profited from its unusual transactions with McDorman. There was evidence that the loss at the end was caused when Community Bank (properly according to Plaintiffs' expert) protected itself from the kite, and when other checks were not paid because McDorman was reacting to MNB's refusal to pay his checks. Neither of these would necessarily have been connected to the McDormans' and Thornton's breach of a fiduciary relationship in their handling of cashier's checks without pre-payment. When a jury is told to consider two causes of action separately, and that definitions applicable to RICO do not apply to fraud or constructive fraud, different results could reasonably be reached without any inherent conflict.

**D. Motion to Alter or Amend Judgment**

Plaintiffs lastly seek to alter or amend the judgment under Rule 59(e). The only grounds the court can infer the Plaintiffs move under are a "manifest error of law or fact." There is no allegation of newly discovery evidence, or an intervening change in the controlling law. Based upon the above

---

[13] Plaintiffs only sought damages which occurred at the end of the kite scheme. Plaintiffs chose not to seek damages for the loss incurred in the day to day float, which if proven, would clearly have resulted from the constructive fraud perpetrated by the McDormans and Thornton.

15

analysis relating to Plaintiffs other grounds for relief and Plaintiffs failure to object to the vast majority of jury instructions, the court is not going to alter or amend the judgment.

### IV. Conclusion

This trial lasted nearly three weeks. Plaintiffs case was built on circumstantial evidence. The affirmative defense was based on circumstantial evidence. The jury returned a detailed verdict and the court entered a take nothing Final Judgment. Plaintiffs have not shown the court that there is not a legally sufficient evidentiary basis to support the answer to Special Issue No. 5. (*in pari delicto)*, that the rest of the verdict is against the great or overwhelming weight of the evidence, or that the court committed manifest error in its application of law or fact.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Judgment as a Matter of Law, Motion to Alter or Amend Judgment, and Motion for New Trial **[Doc. #376]** is **DENIED**.

So **ORDERED** and **SIGNED** this **18** day of **August, 2005.**

_____
Ron Clark, United States District Judge